IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMILY WILSON | : | CIVIL ACTION |
| | : | NO. 09-00787 |
| v. | : | |
| | : | |
| THOMAS J. VILSACK | : | |

O'NEILL, J.                                                          JULY 14, 2010

<u>MEMORANDUM</u>

Plaintiff, Emily Wilson, alleges that defendant, Thomas J. Vilsack, Secretary of the

United States Department of Agriculture, (1) discriminated against her on the basis of her gender;

(2) retaliated against her because she engaged in protected activity; and (3) subjected her to a

hostile work environment.[1]  Defendant moves for summary judgment on all three claims.

Presently before me are defendant's motion for summary judgment, plaintiff's response and

defendant's reply.  For the following reasons, I will grant defendant's motion for summary

judgment.

BACKGROUND

I.      Factual Background

Plaintiff was a program technician at the Bucks County, Pennsylvania office of the

Consolidated Farm Service Agency.  The CFSA is a branch of the Department of Agriculture that

administers conservation and agricultural credit programs.[2]  The CFSA's programs are locally

administered by state and county committees.

The state committees are comprised of farmers appointed by the Secretary.  The Secretary

---

[1]      I have jurisdiction pursuant to 28 U.S.C. § 1331.

[2]      The CFSA was established pursuant to 7 U.S.C. § 6932.

also appoints an executive director for each state, who is responsible for overseeing all CFSA operations within that state. During the time period relevant to this case, Richard Pallman was the executive director for Pennsylvania.

The county committees are comprised of locally elected farmers. The county committee hires and supervises a county executive director. The county executive director, in turn, supervises the program technicians, such as plaintiff, who are responsible for implementing CFSA policy at the county level. During the time period relevant to this case, the Bucks County executive director was Darrell Tribue. Tribue supervised an office comprised of plaintiff and two other female program technicians.

In 2006, CFSA administration in Washington, D.C. directed the Pennsylvania state committee to review staffing levels in each of the county offices. That review revealed that all county offices in Pennsylvania were understaffed. Some, however, were more understaffed than others. In order to remedy this situation, CFSA administration developed a plan–entitled PM-601–to allocate resources more equitably. In implementing PM-601, the Pennsylvania state committee determined that, relative to the rest of the County offices, the Bucks County office was overstaffed by one individual and the Chester County office was understaffed by one individual. The state committee decided that the program technician who was selected for reassignment from the Bucks County office would be offered the position in the Chester/Delaware office.

In June 2006, the Bucks County committee was informed that it must designate one of its employees for reassignment. In response, the Bucks County committee sent a letter to the state committee explaining its disagreement with the state committee's conclusion that the Bucks

County office was overstaffed. On November 14, 2006, however, the Bucks County committee, in consultation with Tribue, reluctantly designated plaintiff for reassignment.

By letter dated December 15, 2006, plaintiff was informed of the Bucks County committee's decision. The letter stated that, effective February 18, 2007, she would be reassigned as program technician for the Chester County office. Her paygrade and salary would remain the same. Because the Chester County office was outside her "normal commuting area," however, she would be entitled to government reimbursement for the cost of her relocation as well as up to eighty hours of paid administrative leave to arrange for such relocation. Finally, the letter informed plaintiff that the reassignment was mandatory–if she declined the reassignment, she could be terminated. In that event, she might be entitled to certain benefits such as severance pay.

On December 18, 2006, plaintiff declined the reassignment. On February 27, 2007, she was informed of a state committee proposal to terminate her for failure to report for duty. The state committee gave her thirty days to respond to the allegations contained in the letter. On April 2, 2007, the state committee terminated her.

II.   Procedural History

On March 8, 2007, plaintiff filed a formal charge with the Equal Employment Opportunity office of the CFSA. Following a lengthy EEO discovery process, she[3] filed this lawsuit against defendants Pallman and Edward T. Schafer, then-Secretary of the United States

---

[3]   Plaintiff was joined in her initial complaint by co-plaintiffs Wendy King and Clint Smith. On August 7, 2009, I ordered the claims of King and Smith transferred to the Middle District of Pennsylvania.

Department of Agriculture.[4]  On May 14, 2009, plaintiff filed an amended complaint.  Her amended complaint included a <u>Bivens</u> claim and two Title VII claims against Pallman and Vilsack.

On August 7, 2009, I dismissed the <u>Bivens</u> claim against both defendants as well as the Title VII claim against Pallman in his individual capacity.  I also dismissed plaintiff's complaint for failure to allege sufficient well-pleaded facts to support a claim of gender-based discrimination.  However, I granted plaintiff leave to file a second amended complaint, which she did on August 20, 2009.

Plaintiff's lawsuit presently includes only claims of gender-based discrimination, retaliation and hostile work environment against Vilsack in his official capacity.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact.  <u>Id.</u> at 322-23.  If the moving party sustains the burden, the

---

[4]        On August 7, 2009, I granted defendant's motion to substitute Vilsack for Schafer.

4

nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial.  See

Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party

may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party must

raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary

judgment motion and cannot survive by relying on unsupported assertions, conclusory

allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.

1989).  However, the "existence of disputed issues of material fact should be ascertained by

resolving all inferences, doubts and issues of credibility against" the moving party.  Ely v. Hall's

Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

ANALYSIS

Defendant moves for summary judgment on all three of plaintiff's claims.[5]  I will discuss

each argument in turn.

I.      Discrimination Based on Gender

        A.      Legal Precepts

        42 U.S.C. § 2000e-2(a)(1) makes it unlawful for any employer "to fail or refuse to hire or

---

[5]      Plaintiff also suggests that defendant failed to answer discovery requests.  She
argues that defendant's alleged discovery misconduct "warrants inferences in favor of plaintiff."
See Pl.'s Br. at 14.  At summary judgment stage, of course, I will draw inferences in the light
most favorable to plaintiff.  See Montanez v. Thompson, 603 F.3d 243, 248 (3d Cir. 2010).  To
the extent that plaintiff desires some additional form of relief, she should have filed an
appropriate motion, as noted in my January 15, 2010 Order, before the close of discovery.

to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  The Court of Appeals has held that a plaintiff invoking section 2000e-2(a)(1) may prove her case under either the pretext theory, set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed-motive theory, originally set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), and subsequently amended by statute.  See Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008).  Although plaintiff may pursue her case under both theories, see Armbruster v. Unisys Corp., 32 F.3d 768, 781 n.17 (3d Cir. 1994) (overruled on other grounds Smith v. Wilkinsburg, 147 F.3d 272, 277-78 (3d Cir. 1998), here she has pursued only a pretext theory in response to the motion for summary judgment.  Pl.'s Br. at 15 (discussing pretext theory).  In reviewing the evidence in this case, I am mindful that my task is not to second guess an employment decision; rather, I must determine whether the employment decision was motivated by an illegal discriminatory purpose.  See Waris v. Heartland Home Healthcare Servs., Inc., No. 09-1904, 2010 WL 538054, at *2 (3d Cir. Feb. 17, 2010).

Proof of discrimination under a pretext theory involves a burden shifting analysis.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  First, the plaintiff must establish a prima facie case of discrimination: (1) she was a member of a protected class; (2) she was qualified for the position she sought; (3) she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination.  See Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (1995).  If

the plaintiff is able to establish a prima facie case, an inference of discriminatory motive arises and the burden of production shifts to the defendant to put forth a legitimate non-discriminatory reason for its actions.  See id.  This is a relatively light burden which "can [be] satisf[ied] . . . 'by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'"  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting St. Mary's Honor Ctr. v. Hicks, 508 U.S. 502, 509 (1993)).  The defendant need not establish that the proffered reason actually motivated its decision but only that it may have.  Id.  Finally, if the defendant is able to put forth a legitimate, non-discriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason is pretextual.  See id.  For the plaintiff to succeed under a pretext theory, she must produce evidence from which a factfinder could either: (1) reasonably disbelieve the defendant's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendant's action.  See Fuentes, 32 F.3d at 764; see also Watson v. Southeastern Pennsylvania Transp. Auth., 207 F.3d 207, 215 (3d Cir. 2000) (holding that in order for a plaintiff to succeed under a pretext theory, she must prove that the impermissible factor was the determinative factor in the adverse employment action).

      B.      Application

      Plaintiff alleges two adverse employment actions: (1) reassignment; and (2) termination.[6]

---

[6]      Defendant argues that plaintiff has not established that she suffered an adverse employment action because she was reassigned to another position with exactly the same title, salary and benefits.  Plaintiff appears to have overlooked this argument.  Nevertheless, I find that plaintiff has presented evidence of an adverse employment action.

      The Court of Appeals has held that "a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action."  Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) (citing Collins v. Illinois, 830 F.2d 692, 702-04 & n.7 (7th Cir. 1987)).  Where

Because each of the alleged adverse employment actions requires a different legal analysis, I will discuss each individually.

1.    Adverse Employment Action - Reassignment

The evidentiary burden at the prima facie stage is rather modest. Gaddy v. Philadelphia Hous. Auth., No. 06-04570, 2008 WL 2928485, at *4 (E.D. Pa. July 28, 2008). "Plaintiff must only demonstrate that plaintiff's factual scenario is compatible with discriminatory intent, i.e. that discrimination could be the reason for the employer's action." Id. (emphasis in original) (quoting Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 508 (3d Cir. 1996)). "The inquiry's central focus is whether the employer is treating some people less favorabl[y] than others because of their race, color, religion, sex, or national origin." Id. (internal quotation marks omitted). After all, "what makes an employer's personnel decision unlawful discrimination is the intent behind that action." Marzano, 91 F.3d at 507.

Plaintiff has not presented any evidence that discriminatory intent could be the reason for her reassignment. It is undisputed that the state committee directed the Bucks County committee to designate one of its three program technicians for reassignment to the Chester County office.

_____

a transfer is lateral in terms of compensation, however, the plaintiff must allege "other facts demonstrating that the transfer was in some way adverse." Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 558 (E.D. Pa. 2005). Moving an employee's office to an undesirable location satisfies this standard. See Collins, 830 F.2d at 703 (citing Trout v. Hidalgo, 517 F. Supp. 873, 890 n.67 (D.D.C. 1981)).
    I have no trouble concluding that plaintiff's reassignment to an office outside her "normal commuting area" was an adverse employment action. By her own calculation, which is undisputed herein, plaintiff's reassignment would have added fifty-eight miles to her daily commute. Wilson Aff. ¶ 27 (Pl.'s Exh 5). If moving an employee's office to an isolated corner of the workplace is an adverse employment action, see Harris v. Richards Mfg. Co., 511 F. Supp. 1193, 1203 (W.D. Tenn. 1981), then the transfer that occurred in this case clearly meets the standard.

It is similarly undisputed that the Bucks County committee, in turn, designated plaintiff for reassignment. See Wilson Dep. 47:6 - 48:11; Noyalas Aff. at 3, 5 (Def.'s Exh. F); Pallman Aff. at 3, 8 (Def.'s Exh. B) ("The selection of [plaintiff], as the individual in the Bucks County Office to be given the directed reassignment was made by the County Office Committee. That selection was not made by anyone in the State Office, or by the State Committee."). Therefore, there is no evidence to support plaintiff's claim that she was reassigned because of discriminatory intent by the state committee–the state committee simply did not participate in deciding which member of the Bucks County office would be reassigned.[7] In essence, plaintiff's claim fails because the evidence shows that those whom she claims harbored discriminatory animus toward her did not choose her for reassignment.

2.    Adverse Employment Action - Termination

Plaintiff also alleges that her termination was motivated by discriminatory animus on the part of the state committee and the state executive director. I will assume for these purposes that plaintiff's evidence establishes a prima facie claim.[8] The burden thus shifts to defendant to articulate a legitimate non-discriminatory reason, which he has done–namely, that plaintiff was

---

[7]    With respect to the Bucks County committee's liability for discrimination, plaintiff has produced no evidence that the county committee's decision was motivated by discriminatory animus. Quite to the contrary, plaintiff asserted that "[t]he County Committee was fighting for me based on the fact that the commute for me to this new job was outside the accepted commuting distance and would have been very time consuming and cost prohibitive for me." Wilson Aff. at 6 (Def.'s Exh. O).

[8]    Notably, plaintiff's allegations with respect to her termination do not suffer from the same deficiency as her allegations with respect to her reassignment because she was terminated by the state committee, see Def.'s Exh. L (termination letter signed by Barron Hetherington, chairman of the state committee), which is the same body that she alleges to have harbored discriminatory intent toward her.

terminated for failing to report to her assigned work station.[9]  See Def.'s Exh L. (termination

letter).

The question presented, then, is whether there is any evidence in the record to support

plaintiff's argument that the proffered legitimate non-discriminatory reason is pretext.  See

Makky, 541 F.3d at 214 (citing St. Mary's Honor Ctr., 509 U.S. at 506-07.  Plaintiff's burden can

be satisfied with evidence from which a factfinder could either: (1) reasonably disbelieve the

defendant's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of the defendant's action.  See

Fuentes, 32 F.3d at 764.  Plaintiff argues that she has met her burden by providing evidence that:

(1) other similarly situated males were not subjected to termination; and (2) defendant failed to

follow its own written personnel and disciplinary procedures.  Pl.'s Br. at 20-23.  I will discuss

each argument in turn.

a.      Comparator Evidence

Plaintiff argues first that defendant's motion for summary judgment should be denied

because "[d]efendant's [sic] produce no evidence showing that this penalty was enforced evenly

with males . . . ."  Pl.'s Br. at 20.  This argument fails because both the burden of proof and the

---

[9]      I note that both parties devote considerable discussion to whether defendant's
reason for reassigning plaintiff–namely, the reallocation of resources among the counties–was
supported by the evidence.  Plaintiff argues vehemently that "[defendant's] workload statistics
show[] [plaintiff's] office was understaffed!"  Pl.'s Br. at 17.  Defendant responds "that the
evaluation for the need for the reassignment was done in the context of distributing limited
resources among all offices in Pennsylvania."  Def.'s Br. at 2.  In any event, the propriety of
defendant's proffered reason for reassigning plaintiff is irrelevant to my disposition of this
question because plaintiff was not terminated for financial reasons, she was terminated for failing
to report for duty as reassigned.  See Termination Letter from Barron Hetherington to Emily
Wilson, April 2, 2007 (Def.'s Exh. M).

burden of production rest with plaintiff at the pretext stage of the burden shifting analysis.  See

Fuentes, 32 F.3d at 763 ("Once the employer answers its relatively light burden by articulating a

legitimate reason for the unfavorable employment decision, the burden of production rebounds to

the plaintiff, who must now show by a preponderance of the evidence that the employer's

explanation is pretextual (thus meeting the plaintiff's burden of persuasion).").  To defeat

summary judgment plaintiff must produce some evidence that she was treated differently than

other similarly situated members of a non-protected class.  See id. at 764.  She may not simply

rest on the fact that defendant has not identified a male who was terminated for a similar

infraction.  See id.

        To that end, plaintiff argues that the evidence shows that there were at least fourteen male

employees of the CFSA who were not terminated.  Pl.'s Br. at 21.  It is not enough, however,

simply to name male employees who have not been terminated.  In order for such evidence to be

of any relevance, plaintiff must show that the male individuals were similarly situated to

plaintiff.   The Court of Appeals has held that whether two individuals are similarly situated must

be determined by "the context of each case."  See Houston v. Easton Area Sch. Dist., 355 Fed.

Appx. 651, 654 (3d Cir. 2009).  In cases arising out of adverse employment decisions, "the

relevant factors often include a 'showing that the two employees dealt with the same supervisor,

were subject to the same standards, and had engaged in similar conduct without such

differentiating or mitigating circumstances as would distinguish their conduct or the employer's

treatment of them.'"  See id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th

Cir. 2000)).

        Although plaintiff is required only to show "substantial similarity" to her proposed

comparators, see id. at 655, there is no evidence in the record to support such a finding. Plaintiff merely lists the names of fourteen male employees of the CFSA and asserts that they had not been terminated. Pl.'s Br. at 21. Without evidence that such male employees were, at minimum, program technicians who had declined reassignment, they cannot be relevant comparators in this case.[10] Plaintiff's proposed comparator evidence is insufficient to raise a question of fact as to whether defendant's legitimate non-discriminatory reason for terminating plaintiff was pretext.

b. Failure To Follow Personnel Procedures

The Court of Appeals has held that departures from the normal procedural rules governing the adverse employment decision at issue may be evidence of discriminatory motive. See Stewart v. Rutgers, The State University, 120 F.3d 426, 433-34 (3d Cir. 1997). Plaintiff argues that her termination was procedurally irregular in three ways: (1) defendant failed to issue her a severance package; (2) her termination was classified as "disciplinary;" and (3) she did not receive a full evidentiary hearing before the assigned Deputy Administrator for Field Operations ("DAFO"). Pl.'s Br. at 22-23. Defendant argues that there is no evidence to support plaintiff's arguments. I agree with defendant.

Plaintiff's argument that she was not issued a severance package is unsustainable. She concedes that she ultimately received the payments to which she was entitled. Wilson Dep.

---

[10] As defendant rightly suggests, on the present record I can conclude that at least five of plaintiff's proposed comparators–Darrell Tribue, Richard Pallman, Barron Hetherington, James Hallowell and Mike Appold–were not similarly situated to plaintiff. None of these individuals were program technicians who declined reassignment. See Wilson Dep. 16:23-25 (Def.'s Exh. W) (identifying Darrell Tribue as the county executive director); Wilson Dep. 50:9-12 (identifying James Hallowell and Mike Appold as county committee members); Wilson Aff. at 4 (Def.'s Exh. O) (identifying Richard Pallman as state executive director and Barron Hetherington as Chairman of the state committee).

91:15-21. Nevertheless, she argues that she should have received information about her severance package earlier than she did. See id. at 91:22-92:15. There is no evidence, however, to support the conclusion that she received information about her benefits in an untimely or otherwise unusual manner. Indeed, the Notification of Personnel Action that informed plaintiff of her termination included a specific description the severance package she would receive. See Def.'s Exh. N.

Plaintiff's argument that her termination was classified as "disciplinary" is similarly meritless. That characterization is based on a statement made by Darrell Tribue at his deposition. See Tribue Dep. 25:22-23 (Pl.'s Exh. 6). Tribue did not, however, offer any facts to support his characterization and the record reveals no other indication that plaintiff's termination was disciplinary. Furthermore, even assuming for these purposes that plaintiff's termination was disciplinary, as she suggests, that alone is not enough to raise an inference of pretext. In order to satisfy her burden, plaintiff must show that her termination was disciplinary and that such characterization is an unwarranted departure from the CFSA's normal procedure. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role."). After all, plaintiff's argument is that the CFSA applied its termination rules to her in an irregular way. She has presented no evidence, however, that the terminations of similarly situated individuals were not disciplinary or that defendant had violated its own rule governing terminations. Without some basis from which to define CFSA's "regular" method of termination, a jury could not conclude that the method applied in this case was procedurally

"irregular."[11]

Plaintiff's related argument that defendant "blackballed" her from exercising her rights to reemployment also fails for lack of supporting evidence. She claims, without citing any authority for her proposition, that she was entitled to be placed on a "reappointment priority list." Wilson Dep. 79:3-9. Even assuming that plaintiff should have been placed on a reappointment priority list, there is no evidence that she has not been placed on such a list. Plaintiff was asked at least twice during her deposition whether she had been placed on such a list and she responded "I don't know. They never gave me any information." Id. 79:7-9.

Plaintiff's final argument–that she did not receive a full evidentiary hearing with the DAFO–is also unsupported by the evidence. In response to plaintiff's April 5, 2007 letter to defendant requesting a DAFO hearing, defendant acknowledged the request and informed plaintiff that the hearing would be held in abeyance pending mediation of plaintiff's EEO complaint. See Letter from John W. Chott, Jr. to Brian K. Wiley, April 19, 2007 (Def.'s Exh. T). Defendant asserts that it received no objection from plaintiff or her attorney to this proposed course of action and my review of the evidence reveals no such objection. More importantly, plaintiff has presented no evidence that this method of handling her DAFO hearing was unusual in any way.

Because I cannot find any evidence of a procedural irregularity with the handing of

---

[11]     My discussion of comparator evidence is analogous. Ordinarily, evidence that an employer treated one employee in a certain way is not, by itself, evidence of discrimination. However, evidence that an employer treated one employee in a certain way while treating every other employee in a materially different way might be evidence of discrimination.

Likewise, evidence that plaintiff's removal was "disciplinary" is only evidence of discrimination if plaintiff can show that others were removed for substantially the same reasons and their removals were not "disciplinary."

plaintiff's termination, much less a procedural irregularity indicative of discriminatory animus, her argument that defendant's legitimate non-discriminatory reason was pretext is unsupportable on this ground.

> c. Additional Evidence

In addition to considering plaintiff's arguments, I have also reviewed the record for any other evidence that defendant's legitimate non-discriminatory reason is pretext for discrimination. I have found no such evidence. To the contrary, the evidence reveals that plaintiff herself has no solid basis to conclude that the adverse employment actions she suffered were motivated by discriminatory animus. At her deposition she was asked why she believed she had suffered gender-based discrimination. She responded "I didn't have any reason–there was no handbook references to support what they were doing to me. There was no reason–other reason that I could figure that they were doing this." Wilson Dep. 26:25-27:6; see also Wilson Aff. at 8 ("Q. Why do you believe that receiving a notice of proposed adverse action to remove you from your position as Program Technician was discriminatory based on your gender (female)? A. There was no other reason, I hadn't done anything wrong. There was no evidence to indicate that anyone else had experienced this including any male employees.").

I am sympathetic to plaintiff's situation. She appears to have been a good worker and well-liked by her colleagues. See Recommendation and Approval of Awards to Emily Wilson, Sep. 11, 2006 (Def.'s Exh. U) ("in recognition of an exemplary willingness in working for the greater good."). In spite of all this, however, she was given the Hobson's choice of accepting reassignment to a distant office or being terminated. To make matters worse, she was understandably confused by ambiguous correspondence from the government bureaucracy

responsible for executing the reassignment.[12]  Her position was unenviable to be sure.  Unfair and

confusing terminations, however, are not actionable under Title VII.  Because I find no evidence

of discriminatory animus on the part of defendant, I must grant judgment in defendant's favor on

plaintiff's discriminatory termination claim.

C.     Conclusion

Because I have found that there is insufficient evidence from which a reasonable fact

finder could conclude that the adverse employment actions suffered by plaintiff were caused by

defendant's discriminatory animus, I will grant judgment in favor of defendant on this claim.

II.     Retaliation

Defendant also moves for summary judgment on plaintiff's retaliation claim.

---

[12]     For example, in its December 15, 2006 letter to plaintiff in which it explained the
CFSA's decision to reassign her, it explained that if she rejected the reassignment, "it may be
necessary to separate [her] from the service."  Letter from Barron Hetherington to Emily Wilson,
Dec. 15, 2006 (Def.'s Exh. K).  That same letter, however, later gave her the option to accept or
decline the reassignment.  See id.  Plaintiff testified that when she declined the reassignment "I
had no idea that there would be any type of adverse action against me [because] [t]he letter just
noted that I had an opportunity to accept or decline."  Wilson Dep. 36:24 - 37:2.  She later
testified:

> [t]he letter said I may be separated.  It didn't say you will be, it didn't
> say–give me a date I will be separated.  They did not give me any
> information, and as far as I was concerned at that point I was
> employed as a federal government employee.  And I would continue
> to be employed there.

Wilson Dep. 39:13-19.
        Similarly, the letter was ambiguous with respect to the benefits to which plaintiff would
be entitled if she declined reassignment.  The letter stated that "[a] declination may entitle you to
severance pay."  Letter from Barron Hetherington to Emily Wilson, Dec. 15, 2006 (Def.'s Exh.
K).  Plaintiff testified that the word "may" caused her to be confused about whether she would be
entitled to severance pay if she declined the reassignment.  Wilson Dep. 24:11-25:3.

A.     Legal Precepts

Title VII prohibits an employer from retaliating against an employee for opposing a

discriminatory practice.  42 U.S.C. § 2000e-3(a) provides:

> [i]t shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has opposed
> any practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing
> under this subchapter.

To state a claim for retaliation, the plaintiff must show that: "(1) she engaged in activity

protected by Title VII; (2) the employer took an adverse employment action against her; and (3)

there was a causal connection between her participation in the protected activity and the adverse

employment action."  Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)

(quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).  With respect to the first

element of the prima facie case, activity protected by Title VII includes participation in certain

formal Title VII proceedings, such as proceedings before the EEOC or in a federal court, as well

as less formal opposition to the perceived discrimination.  See id.  The discrimination opposed by

the employee need not actually be unlawful under Title VII, but the employee must hold in good

faith an objectively reasonable belief that the activity she opposes is unlawful.  See id. at 341.  To

establish the third element of the prima facie case, the plaintiff must produce enough evidence

that a reasonable jury could conclude that the adverse employment action was motivated by

retaliatory animus.  See id.

Where a plaintiff succeeds in establishing its prima facie case, the now-familiar

McDonnell Douglas burden shifting analysis applies.  See id.  The defendant must put forth a

legitimate, non-retaliatory reason for its conduct.  See id.  Then, the burden shifts back to the

plaintiff to show that the reason advanced by the defendant is pretextual and the real reason

behind the adverse employment action was retaliation.  See id.

B.      Application

Plaintiff alleges that she suffered retaliation for three different protected activities.  First,

she alleges that she was reassigned and terminated in retaliation for her support of the EEO

complaint filed by Bucks County executive director, Darrell Tribue.  Pl.'s Br. at 9.  She further

alleges that she was terminated for appealing her reassignment and for appealing her termination.

Defendant argues that, for a variety of reasons, summary judgment should be granted in his favor.

I will discuss each argument in turn.

1.      Plaintiff's Support of Darrell Tribue's EEO Complaint

Plaintiff's supervisor, Darrell Tribue, filed an EEO complaint against the CFSA in 2004.

Wilson Dep. 19:9-13; Pl.'s Exh. 4 (noting Tribue filed an EEO complaint in 2004).  Plaintiff

argues that defendant reassigned her because of her identification as a witness in Tribue's EEO

complaint.  Pl.'s Br. at 26-27.  This claim fails for the same reason that her claim that she was

reassigned due to gender discrimination failed–the body that allegedly retaliated against her, the

state committee and state executive director, did not identify her for reassignment.  See Wilson

Dep. 47:6 - 48:11; Noyalas Aff. at 3, 5 (Def.'s Exh. F); Pallman Aff. at 3, 8 (Def.'s Exh. B).

Instead, it was the county committee and Darrell Tribue–people who plaintiff concedes harbored

no discriminatory or retaliatory animus–who designated her to be reassigned.

Plaintiff also alleges that she was terminated in retaliation for her EEO activity on behalf

of Tribue.  This allegation does not suffer from the same causal deficiency as her reassignment

claim because those who terminated her, the state committee and that state executive director, are those she alleges retaliated against her. It does, however, suffer from a different deficiency–namely, failure to produce any evidence from which a reasonable factfinder could conclude that the state committee and state executive director were aware that she had participated in Tribue's EEO action. This is a critical omission because in order to survive summary judgment plaintiff must show a causal relationship between the decision to terminate her and her prior EEO activity. See Sarullo, 352 F.3d at 800; Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 415 (3d Cir. 1999).

Although plaintiff asserts in her brief that "defendant knew that [plaintiff] had been identified both by Tribue and in the report of investigation conducted by defendant's EEO representative Gregory Ferby," she cites no record evidence in support of that proposition other than a one page document that includes that sentence "[plaintiff] alleges the management officials who subjected her to reprisal and retaliatory actions were Mr. Richard Pallman, State Executive Director and Ms. Susan Myers, Administrative Officer." See Pl.'s Br. at 29 (citing Pl.'s Exh. 3).[13] This language is not evidence, however, that any of those responsible for plaintiff's termination knew that she had participated in Tribue's EEO case. Similarly, plaintiff's brief states that "Tribue, her supervisor [sic] specifically confirmed [plaintiff] 'was called as a witness in a complaint he had filed.'" See Pl.'s Br. at 29 (citing Pl.'s Exh. 4). This assertion is substantially undermined by plaintiff's own statement of undisputed facts which states "[Tribue's] case was settled before a complete list of witnesses was compiled by Mr. Tribue's lawyer and her testimony was not needed." Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶

---

[13]     Plaintiff's exhibit three appears to be a one page excerpt from an EEO document.

15. Even assuming Tribue's statement is true, however, it is not evidence that defendant or his agents knew that plaintiff had participated in Tribue's EEO action.

On the other hand, there is plenty of evidence to suggest that those responsible for plaintiff's termination had no knowledge of her alleged connection to Tribue's EEO case. Indeed, every individual possibly connected with plaintiff's termination has denied knowledge of her prior EEO activity. See Pallman Aff. at 3 (Def.'s Exh. B) ("Q. . . . Were you aware that [plaintiff] had participated in prior EEO activity? A. No, I am not."); Hetherington Aff. at 3 (Def.'s Exh. C) ("Q. . . . Were you aware that [plaintiff] had participated in prior protected EEO activity? A. No, I did not know that."); Myers Aff. at 3 (Def.'s Exh. D) ("Q. . . . Were you aware that [plaintiff] had participated in prior protected EEO activity? A. No, I was not."); Noyalas Aff. at 3 (Def.'s Exh. F) ("Q. . . . Were you aware that [plaintiff] had participated in prior protected EEO activity?  A. No, I was not.").

 I find there is no evidence from which a reasonable jury could conclude that plaintiff's termination was motivated by retaliatory animus for her alleged participation in Tribue's EEO action.

## 2. Plaintiff's Appeal of her Reassignment

Plaintiff also alleges that she was terminated in retaliation for appealing her reassignment. I will assume for these purposes that she has established a prima facie case sufficient to shift to defendant the burden of production to offer a legitimate non-discriminatory reason for her termination.  As discussed above, defendant argues that plaintiff was terminated for failing to report for duty in Chester County.  This is sufficient to shift the burden back to plaintiff to produce some evidence that the proffered legitimate non-discriminatory reason was pretextual.

I find that there is no evidence in the record to support a finding that defendant's legitimate non-discriminatory reason for terminating plaintiff was pretextual. Quite to the contrary, the evidence overwhelmingly establishes that plaintiff was terminated for declining her reassignment and failing to report for duty in Chester County. Plaintiff was first informed that she could be terminated for declining her reassignment well in advance of February 18, 2007–the date she initially filed an EEO complaint. In the December 15, 2006 letter notifying plaintiff of her reassignment, she was informed that "[u]nder regulations of the USDA you have an obligation to accept this reassignment to a different commuting area. Should you refuse to accept this reassignment, it may be necessary to separate you from the service." Letter from Hetherington to Wilson, Dec. 15, 2006 (Def.'s Exh. K). Later, that same letter stated "[f]ailure to report for duty at your new work station on February 19, 2007, will result in your being placed in absence without leave (AWOL) status until further action is taken." Id. Plaintiff concedes that, before declining the reassignment, she reviewed the relevant policy and became aware that by declining she could be terminated. See Wilson Aff. at 8 (Def.'s Exh. O).[14] It is illogical, without much more, to suggest that a proposed adverse action could be in retaliation for a later-filed EEO complaint.[15]

---

[14]    I note that defendant's actions were consistent with the CFSA's internal policy–set forth in 27-PM–pertaining to directed reassignments. The plan clearly provides that "[i]f an employee chooses not to accept a directed reassignment, separate the employee according to 22-PM." 27-PM § 336(E) (Def.'s Exh. N).

[15]    This is not to say that it is impossible in every case for a proposed adverse action to be implemented in retaliation for a later EEO complaint. It is conceivable, for instance, that an employer might impose the adverse action more quickly in retaliation for a protected activity. It is likewise conceivable that an employer might apply the most severe possible consequences to an employee who engages in protected activity while reserving less severe consequences for those who do not. This, however, is not such a case. There is no evidence that defendant varied

A reasonable factfinder could not conclude that plaintiff's termination was in retaliation for filing an EEO complaint.

3.      Plaintiff's Appeal of her Termination

Finally, plaintiff argues that she was terminated in retaliation for her appeal of her proposed termination.  See Pl.'s Br. at 9 ("In March 2007, [p]laintiff engaged in filing an internal appeal of her termination.").  Plaintiff was notified of her proposed termination by letter dated February 27, 2007.  See Letter from Hetherington to Wilson, Feb. 27, 2007 (Def.'s Exh. L).  On March 8, 2007, plaintiff appealed the proposed termination.  See Letter from Wiley to Pallman, Mar. 8, 2007 (Def.'s Exh.U).  She argues that her April 3, 2007 termination was in retaliation for her March 8, 2007 appeal.

There is no evidence to support plaintiff's conclusion.  As defendant rightly points out, the decision to terminate plaintiff had been made on February 27, 2007.  See Def.'s Rep. at 7; see also Letter from Hetherington to Wilson, Feb. 27, 2007 (Def.'s Exh. L).  The April 2, 2007 notice of termination was not an additional adverse action, it was merely the finalization of the termination process that had been initiated on February 27, 2007.  Therefore, the argument that plaintiff's termination was in retaliation for the appeal of her proposed termination is unavailing.

Even assuming, however, that the April 2, 2007 termination was an adverse action separate and distinct from the February 27, 2007 proposed termination, plaintiff has not produced any evidence from which a reasonable factfinder could conclude that there was a causal connection between her termination and her appeal of the proposed termination.  To establish

_____

from the time line he ordinarily follows in terminating an employee.  Nor is there evidence that others designated for reassignment were not fired upon declining such reassignment.

that a causal connection existed between a protected activity and an adverse employment action, plaintiff must either: (1) present evidence that the temporal proximity between the two events was "unusually suggestive" of retaliation; or (2) present other evidence "such as evidence that the employer engaged in a pattern of antagonism with the plaintiff." See McDonald v. Pennsylvania Office of Att'y Gen., 08-0658, 2010 WL 1856030, at *14 (E.D. Pa. May 10, 2010).

In support of her argument, she points primarily to what she terms the "close temporal proximity between the complaint and the action." See Pl.'s Br. at 28. Close temporal proximity between a protected activity and an adverse action can undoubtedly be evidence of retaliatory animus. The case cited by plaintiff, Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), illustrates this principle. There, the plaintiff filed an EEO complaint alleging that he had suffered national-origin discrimination. See Jalil, 873 F.2d at 708. Two days later, he was unexpectedly terminated. See id.

This case is obviously different. Plaintiff was notified that she would be terminated and given thirty days to respond to the proposed action. Thirty-three days later, she received her notice of termination. This is not the "unusually suggestive" temporal proximity necessary, by itself, to survive summary judgment. See Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004); see also Luckiewicz v. Potter, 670 F. Supp. 2d 400, 411 (E.D. Pa. 2009) ("Timing alone is normally insufficient to raise an inference of causation.") (internal quotations omitted). Plaintiff has submitted no other evidence from which a reasonable factfinder could conclude that there is a causal connection between her appeal and her termination. See Robinson v. SEPTA, 982 F.2d 892, 895 (3d Cir. 1993) (acknowledging that "timing plus other evidence" might be sufficient to suggest a causal connection between a protected activity and an adverse

employment action).

In sum, a reasonable factfinder could not conclude based on the evidence presently in the record that plaintiff was terminated due to her appeal of her proposed termination.

C.    Conclusion

Because I have found that there is insufficient evidence from which a reasonable factfinder could conclude that the adverse employment actions suffered by plaintiff were in retaliation for her protected activity, I will dismiss her retaliation claim.

III.    Hostile Work Environment

Despite making only passing reference in her complaint to her allegedly hostile work environment, see, e.g., Sec. Am. Compl. ¶ 44 ("Defendant created a hostile work environment for [p]laintiff by ignoring federal and states [sic] anti-discrimination laws and taking no meaningful or effective action to terminate the behavior, to remove the offending environment or even to discipline their offensive employees."), and including only two counts–gender discrimination and retaliation–in her complaint, plaintiff now apparently intends to pursue a hostile work environment claim. See Pl.'s Br. at 34 ("Defendant has not eliminated proof that [plaintiff] was subjected to a [h]ostile [w]ork [e]nvironment.").[16]

A.    Legal Precepts

Title VII also prohibits the establishment of a work environment that is hostile to members of a protected class. See Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.

---

[16]    Unsure of whether plaintiff intended to pursue a hostile work environment claim, defendant has not fully briefed the issue. See Def.'s Rep. at 7-8. Because I will grant judgment on this claim in favor of defendant, defendant's request for the opportunity to brief the issue more fully will be denied as moot.

1999) (applying hostile work environment analysis to allegations of sexual harassment). In order to state a claim under the rubric of hostile work environment, plaintiff must show: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive;[17] (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) the existence of respondeat superior liability. See Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 276-77 (3d Cir. 2001).

In evaluating a claim of hostile work environment, I am mindful of the Supreme Court's cautionary instruction that Title VII is not designed to be a "general civility code." Faragher v. Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Accordingly, "offhanded comments and isolated incidents" are insufficient to sustain a hostile work environment claim. See Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). "Rather, the conduct must be extreme [enough] to amount to a change in the terms and conditions of employment." Id. (internal citations omitted). In determining whether the conduct is sufficiently severe or pervasive to implicate Title VII, District Courts must consider the totality of the circumstances. See id. (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). Such circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

---

[17]    Until 2006, the Court of Appeals required that discrimination be "pervasive and regular." See, e.g., Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001). In 2006, however, the Court of Appeals altered its formulation of the standard to conform to Supreme Court precedent. See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006) (citing Pa. State Police v. Suders, 542 U.S. 129, 133 (2004)). The standard I apply here–"severe or pervasive"–comes from Jensen.

offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 263 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

B.      Application

Plaintiff argues, in essence, that she was subjected to a hostile work environment because "she was treated differently, reassigned outside of allowable area, denied a severance package and then fired without any final decision on her right to an appeal." Pl.'s Br. at 34. Even assuming that there is evidence in the record to support these allegations, they do not rise to the level of "severe or pervasive" conduct. See Abramson, 260 F.3d at 276-77. The record is completely devoid of evidence that plaintiff's workplace was hostile or abusive. See Harris, 510 U.S. at 23.

C.      Conclusion

Because I find that no reasonable factfinder could conclude that plaintiff suffered severe or pervasive discrimination based on her gender, I will dismiss her hostile work environment claim.

CONCLUSION

I find that there is insufficient evidence in the record from which a reasonable jury could conclude that plaintiff suffered gender-based discrimination, retaliation or a hostile work environment. I will therefore grant defendant's motion and enter judgment in his favor.